**THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

FLORIDA HEALTH SCIENCES CENTER, INC. d/b/a TAMPA GENERAL HOSPITAL,

Plaintiff,

v.

ELI LILLY AND COMPANY; and LILLY USA, LLC,

Defendants.

Case No. 8:26-cv-01918-WFJ-LSG

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

I. *Astra* Bars TGH's Claims. ....................1

II. The Supremacy Clause Bars TGH's Claims. ....................3

III. Lilly's Conduct Falls within FDUTPA's Safe Harbor....................5

IV. Each of TGH's Counts Fails to State a Claim. ....................5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AbbVie, Inc. v. Murrill*,
180 F.4th 747 (5th Cir. 2026) ....................4

*Astra USA, Inc. v. Santa Clara Cnty.*,
563 U.S. 110 (2011) ....................1, 3

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001) ....................7

*Coast Pump & Supply Co. v. Franklin Elec. Co.*,
2025 WL 2676430 (M.D. Fla. Sept. 18, 2025) ....................8

*Coffey v. WCW & Air, Inc.*,
2020 WL 3250744 (N.D. Fla. Mar. 25, 2020) ....................7

*Desantis v. Marriott Ownership Resorts, Inc.*,
2014 WL 6389772 (M.D. Fla. Nov. 14, 2014) ....................7

*Fitzpatrick v. Gen. Mills, Inc.*,
635 F.3d 1279 (11th Cir. 2011) ....................6

*FTC v. Simple Health Plans LLC*,
379 F. Supp. 3d 1346 (S.D. Fla. 2019) ....................7

*Irving v. Mazda Motor Corp.*,
136 F.3d 764 (11th Cir. 1998) ....................3

*Kurimski v. Shell Oil Co.*,
570 F. Supp. 3d 1228 (S.D. Fla. 2021) ....................7

*Martorella v. Deutsche Bank Nat'l Tr. Co.*,
2015 WL 11347664 (S.D. Fla. Aug. 6, 2015) ....................8

*McWane, Inc. v. FTC*,
783 F.3d 814 (11th Cir. 2015) ....................8

*MJS Music Publ'ns, LLC v. Hal Leonard Corp.*,
2006 WL 1208015 (M.D. Fla. May 4, 2006) ....................8

*Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*,
156 F.4th 68 (2d Cir. 2025) ..... 3

*PhRMA v. Frey*,
2026 WL 184504 (D. Me. Jan. 23, 2026) ..... 4

*Pop v. LuliFama.com LLC*,
145 F.4th 1285 (11th Cir. 2025) ..... 6

*Schojan v. Papa John's Int'l*,
2014 WL 6886041 (M.D. Fla. Dec. 8, 2014) ..... 8

*State v. Com. Com. Leasing, LLC*,
946 So. 2d 1253 (Fla. 1st DCA 2007) ..... 7

*United States v. Washington*,
596 U.S. 832 (2022) ..... 4

*Young v. Cmty. Health Sys., Inc.*,
2023 WL 6121795 (11th Cir. Sept. 19, 2023) ..... 5

**Rules and Other Sources**

Amicus Brief of the U.S. submitted in *PhRMA v. Neronha*,
2026 WL 527776 (1st Cir. Feb. 25, 2026) ..... 5

Federal Rule of Civil Procedure 9(b) ..... 5, 6

The Court should dismiss TGH's claims. TGH concedes that its *per se* claim (Count III) cannot proceed in its current form. And for the other two claims, TGH's Opposition runs away from the Complaint—rewriting the allegations and requesting different relief. But TGH cannot repackage its claims to escape *Astra*'s bar on this "340B-pricing" dispute, nor can it revive state-law theories that fail as a matter of law.

## I. *ASTRA* BARS TGH'S CLAIMS.

*Astra USA, Inc. v. Santa Clara County* bars private parties from bringing "suits to enforce § 340B"—"[n]o matter the clothing in which [they] dress their claims." 563 U.S. 110, 113-14, 121 (2011); Mot. 10-13. TGH recognizes that bar: "[I]t does not dispute that HRSA alone enforces 340B pricing" and "oversees 340B compliance." Opp'n 4, 8. TGH simply asserts that its claims fall outside *Astra* because they "rest instead on independent Florida duties" and would "exist without any alleged ceiling-price violation." Opp'n 8-9. TGH's Complaint—and its arguments—reveal otherwise.

Start with the claims themselves. Count I alleges that Lilly "abus[es] its market power and monopoly power *by denying TGH access to discounted pricing*." Compl. ¶ 134 (emphasis added). Count II alleges that Lilly misrepresents "that it *offers 340B discounts to covered entities*." *Id.* ¶¶ 142-43 (emphasis added). And now-abandoned Count III alleged a violation *of § 340B*. *Id.* ¶ 155. Each turned on whether Lilly lawfully denied TGH "the … 340B ceiling price." *Id.* ¶ 111; Mot. 12-13 (compiling "drug pricing" allegations). And Lilly's *only obligation to offer the 340B ceiling price* comes from its federal PPA agreement with HHS—there is no other obligation.

TGH's Opposition confirms its claims turn on alleged § 340B violations. For

Count I, TGH says its unfair competition claim rests on "Lilly's abuse of market power" to impose a "coercive" condition. Opp'n 11, 28. But Lilly allegedly "abus[ed] its market power," not by denying *market* prices, but by "denying TGH access to *discounted* pricing." Compl. ¶ 134 (emphasis added). TGH explicitly premises its claim on the denial of federal 340B pricing (stemming from TGH's refusal to accept Lilly's federally-permitted claims-data condition).

For Count II, the Opposition says Lilly misrepresented "to the federal government, *through its PPA with the Secretary of HHS*, that covered entities will receive its discounts, with pertinent details." Opp'n 23 (emphasis in original) (quotations omitted). But TGH concedes the PPA "memorialize[s] the parties' 340B obligations." Opp'n 3 (quotation omitted). So, the only way to find a misrepresentation "*through [the] PPA*," *id.* at 23, is to find that Lilly violated its federal 340B obligations—obligations TGH admits it cannot enforce, *id.* at 8. The same goes for TGH's theory that Lilly makes misrepresentations to "the market" whenever "it confirms its participation in the 340B program." Opp'n 23 (quoting Compl. ¶¶ 58, 109). That confirmation of participation could be a misrepresentation *only if Lilly somehow violated § 340B* (and even then, there would merely be disagreement as to *how* Lilly participates, not whether). TGH's own arguments show that Lilly's statements would *not* "be actionable under Florida law … if Section 340B did not exist." Opp'n 10.

The requested relief "confirm[s] that [TGH] is in essence seeking to enforce the 340B Program." Mot. 13 (quotation omitted). TGH insists that its damages claims "exist without any alleged ceiling-price violation," Opp'n 8, yet it alleges that it was

Lilly's decision to "cut off TGH from 340B pricing" that "caus[ed] its injury." Compl. ¶ 149; *see also id.* ¶¶ 83-92, 99, 115, 125. Likewise, TGH says the Complaint's request to "enjoin" Lilly "to restore TGH's access" to 340B pricing, *id*. ¶¶ 34, 127-28, merely "describe[d] hoped-for effects of a prohibitory injunction." Opp'n 11. Nonsense. TGH requests damages for, and an injunction to restore, lost 340B pricing because TGH objects to the lost *340B pricing*. It's what prompted this suit: Lilly's condition requiring TGH to "submit claims-level data … or *lose 340B pricing*." Opp'n 2 (emphasis added).

This case is the inverse of *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68 (2d Cir. 2025). TGH's claims both "turn on … whether Defendants violated Section 340B" *and* seek to "compel [Lilly] to offer the discounted drugs at a specific Section 340B ceiling price." Opp'n 9 (quoting *Mosaic*). *Astra* requires dismissal.

## II. THE SUPREMACY CLAUSE BARS TGH'S CLAIMS.

TGH's claims are preempted. No presumption against preemption applies "[w]hen considering implied preemption," *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 769 (11th Cir. 1998)—let alone an argument about a *congressionally-created program*.

***Conflict Preemption***. TGH's claims conflict with federal law by undercutting § 340B's unitary enforcement scheme, stripping HHS of its exclusive enforcement authority, and thwarting § 340B's anti-abuse mechanisms. Mot. 14-17. TGH's response: § 340B doesn't regulate "deceptive, unfair, and unconscionable conduct in the sales and marketing of products." Opp'n 16 (quotation omitted). But the question here is not whether "FDUTPA and Section 340B [can] coexist" generally. *Id.* The question is whether allowing TGH's particular FDUTPA claims to proceed would

"stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Mot. 14. It would. And TGH's attempt to recast its claims at a high level of generality—as involving "state regulation of health and safety," Opp'n 17—does not rebut the preemption arguments raised. *Compare id. with* Mot. 14-17.

***Field Preemption***. TGH's field preemption argument (at 18-19) slays a strawman: "the proposition that Section 340B preempts any state law touching 340B drugs," like "delivery" and "distribution." *Id.* (quotation omitted). That is not Lilly's argument. Lilly's argument is that TGH's claims "invade the congressionally created field of *340B pricing and enforcement*." Mot. 2-3, 17-19 (emphasis added). With respect to that field, TGH offers no response.

***Intergovernmental Immunity***. Intergovernmental immunity bars TGH's claims for similar reasons. Mot. 19-20. TGH counters that "the PPA agreement" between Lilly and the federal government "does not make Lilly a federal contractor" because "PPAs are not ordinary transactional, bargained-for contracts." Opp'n 19 (quotations omitted). But the doctrine draws no distinction between form contracts and bargained-for contracts. It protects those with whom "the Federal Government … deals" to carry out a federal objective. *United States v. Washington*, 596 U.S. 832, 838 (2022) (quotation omitted).[1] And while FDUTPA does not facially target 340B "Program participation,"

[1] The decision in *PhRMA v. Frey* (now on appeal) relied on no intergovernmental-immunity precedent whatsoever. 2026 WL 184504, at *6 (D. Me. Jan. 23, 2026). And in *AbbVie, Inc. v. Murrill*, the statute did not regulate activity implicated by the PPA; it regulated "relationships between covered entities and their contract pharmacies—relationships to which [a manufacturer] is not a party." 180 F.4th 747, 765 (5th Cir. 2026).

Opp'n 20, TGH's *claims* "target[] and discriminate[] against" Lilly because of its "participat[ion] in a federal program." U.S. Amicus Brief at *15, *PhRMA v. Neronha*, 2026 WL 527776 (1st Cir. Feb. 25, 2026); *see* Mot. 19-20.

## III. LILLY'S CONDUCT FALLS WITHIN FDUTPA'S SAFE HARBOR.

FDUTPA's safe harbor also bars TGH's claims. The asserted claims attempt to "create [a] new obligation[]" for 340B participants found nowhere in federal law. *Young v. Cmty. Health Sys., Inc.*, 2023 WL 6121795, at *3 (11th Cir. Sept. 19, 2023) (per curiam); Mot. 20-23. TGH's conclusory claim that its theory does not "create a 'new obligation'" defies reality. Opp'n 34. If TGH prevails, Lilly will be forced to sell at 340B discounts *without any conditions on its offer*. That's not what federal law requires; that's a new obligation. TGH's position also conflicts with obligations that federal law *does* impose: the Inflation Reduction Act will require Lilly to sell certain drugs at the lower of the "maximum fair price" and the 340B price. Mot. 21. TGH offers no explanation as to how Lilly could comply without claims data.

## IV. EACH OF TGH'S COUNTS FAILS TO STATE A CLAIM.

***Per Se Claim (Count III).*** "TGH admits that it has not adequately alleged a statutory predicate for a *per se* violation." Opp'n 1. Count III should thus be dismissed.

***Misrepresentation (Count II).*** None of TGH's scattershot theories for Count II states a viable claim. *First*, TGH's misrepresentation theory does not satisfy Rule 9(b), identify any deceptive statements, nor show that any allegedly deceptive statement harmed TGH. Mot. 24-31. TGH resists the application of Rule 9(b), contending its claim does not "sound in fraud" because it "more closely track[s] the elements of a

FDUTPA claim." Opp'n 22. But the Eleventh Circuit has already held that *a FDUTPA claim* alleging "affirmative misrepresentations" or "misrepresentations by omission" must satisfy Rule 9(b)'s standard. *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1295 (11th Cir. 2025) (quotations omitted). To the extent TGH still maintains that Lilly's "representations" were "false and misleading," and that these "misrepresentations" "caused TGH injury," Compl. ¶¶ 142-46, Rule 9(b) applies.

TGH hasn't satisfied Rule 9(b). TGH's claim is about Lilly's various representations to "the market and to the federal government that it offers 340B discounts to covered entities." *Id.* ¶ 142; *see id.* ¶¶ 55-58. But TGH does not allege "when [it] saw" any statements or "how those [statements] caused [TGH] to purchase" Lilly's products. *Pop*, 145 F.4th at 1296-97. TGH argues (at 23, 25) that it "need not prove reliance on the allegedly false statement," citing *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279 (11th Cir. 2011). But whether reliance is an element or not, TGH must allege that the misrepresentation caused its injury. Indeed, recognizing that reliance was not an element of a FDUTPA claim, *Pop* applied Rule 9(b) and faulted the plaintiff for failing to allege "*how—in any detail*—the [misrepresentations] caused Pop … to purchase" the products. *Pop*, 145 F.4th at 1295 n.9, 1297 (emphasis added). Under *Pop*, TGH must allege *how* "Lilly's misrepresentations have caused TGH injury." Compl. ¶ 146.

Regardless, TGH alleges no misrepresentation. Lilly *does* "participat[e] in the 340B program," Opp'n 23; Compl. ¶ 58. TGH just disagrees with *how* Lilly participates. And any argument that Lilly made misrepresentations to the government

"*through [Lilly's] PPA*," Opp'n 23, is barred by *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001), and an improper attempt to enforce § 340B, *see supra* 1-3. Moreover, HRSA—the administrator of the program—has not taken any action against Lilly or done anything to suggest that Lilly no longer "participates."

*Second*, TGH's attempt to recast Count II as alleging a "bait and switch" scheme makes no sense. Opp'n 24 (quotations omitted). This is not a case of "rigged internet searches," *FTC v. Simple Health Plans LLC*, 379 F. Supp. 3d 1346, 1352 (S.D. Fla. 2019); Opp'n 24 (citing same), or conditions hidden "in small print," *Kurimski v. Shell Oil Co.*, 570 F. Supp. 3d 1228, 1247 (S.D. Fla. 2021). Under TGH's own allegations, "there is neither a bait nor a switch." *See id.* at 1243. TGH was on notice: TGH admits Lilly "announced" its condition in January 2026, that TGH engaged with Lilly, and that TGH received "Notice"—well *before* TGH purchased the medicine at market price—that Lilly's offer of the 340B price included a claims-data condition. Compl. ¶¶ 8, 68, 70, 75, 83. So TGH's own "allegations undercut [its] bait-and-switch theory." *Desantis v. Marriott Ownership Resorts, Inc.*, 2014 WL 6389772, at *4 (M.D. Fla. Nov. 14, 2014).

*Third*, TGH cites zero authority to suggest that it is unconscionable or unfair for Lilly to charge TGH *the same price it charges all non-340B entities*. Opp'n 20-22, 26. TGH cites two unconscionability cases. In one, the court rejected an unconscionability argument. *Coffey v. WCW & Air, Inc.*, 2020 WL 3250744, at *3 (N.D. Fla. Mar. 25, 2020). In the other, the Complaint alleged "a Ponzi scheme" targeting "unsophisticated" "small businesses." *State v. Com. Com. Leasing, LLC*, 946 So. 2d

1253, 1259 (Fla. 1st DCA 2007). TGH's unfair-conduct cases similarly involved conduct nothing like what is alleged here. Opp'n 26.[2] TGH offers no cognizable unconscionability theory—let alone a theory that exists absent § 340B. *Supra* 1-3.

***Unfair-Competition Claim (Count I).*** Finally, TGH's defense of its "unfair-competition claim" is riddled with internal inconsistencies. TGH concedes that it "does not[] plead a stand-alone Sherman Act claim," yet relies on Sherman Act cases to argue Lilly's conduct is unlawful. Opp'n 29. TGH contends that it need not define the relevant market, *id.*, yet cites *McWane, Inc. v. FTC*, 783 F.3d 814 (11th Cir. 2015), which provides that a plaintiff must "successfully define[] the relevant market," *id.* at 828. TGH admits that Lilly's patents amount to "lawful acquisition of monopoly power," Opp'n 31, yet complains that Lilly "wield[ed]" that power unlawfully by using "coercive condition[s]" to charge "supracompetitive prices," *id.* at 28. Lastly, TGH admits that it is paying "wholesale acquisition cost," *id.* at 12, meaning it is paying the exact same price as any other entity that is not eligible for the federal 340B *discounted price*, yet complains about the price of Lilly's medicines. None of these arguments cure the shortcomings in TGH's theory. Mot. 33-35. This is not a case about competition—it is about a federal regulatory regime that TGH seeks to privately enforce.

[2] *See MJS Music Publ'ns, LLC v. Hal Leonard Corp.*, 2006 WL 1208015 (M.D. Fla. May 4, 2006) (false notices of IP infringement); *Schojan v. Papa John's Int'l*, 2014 WL 6886041 (M.D. Fla. Dec. 8, 2014) (charged tax when none owed); *Coast Pump & Supply Co. v. Franklin Elec. Co.*, 2025 WL 2676430 (M.D. Fla. Sept. 18, 2025) ("deceived [plaintiff] into restrictive covenants"); *Martorella v. Deutsche Bank Nat'l Tr. Co.*, 2015 WL 11347664 (S.D. Fla. Aug. 6, 2015) (charged amounts unrelated to insurance).

Respectfully submitted,

/s/ A. Lee Bentley, III
A. Lee Bentley, III, Lead Counsel
Giovanni P. Giarratana
**BRADLEY ARANT BOULT CUMMINGS LLP**
1001 Water Street, Suite 1000
Tampa, FL 33602
Telephone: (813) 559-5500
lbentley@bradley.com
ggiarratana@bradley.com

/s/ John O'Quinn
John O'Quinn, P.C.
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.,
Washington, D.C. 20004
Telephone: (202) 389-5191
john.oquinn@kirkland.com

J. Matthew Rice
**KIRKLAND & ELLIS LLP**
150 3rd Ave S.
Nashville, TN 37201
Telephone: (629) 222-0165
matthew.rice@kirkland.com

Marianna C. Chapleau
Dayron Silverio
**KIRKLAND & ELLIS LLP**
830 Brickell Plaza,
Miami, FL 33131
Telephone: (305) 432-5687
mchapleau@kirkland.com
dayron.silverio@kirkland.com

## CERTIFICATE OF SERVICE

I certify that on October 20, 2026, I electronically filed the foregoing with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.

/s/ A. Lee Bentley, III
Counsel of Record