**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

FLORIDA HEALTH SCIENCES CENTER, INC. d/b/a TAMPA GENERAL HOSPITAL,

*Plaintiff*,

*v.*

ELI LILLY AND COMPANY, *et al.*,

*Defendants*.

Case No. 8:26-cv-01918-WFJ-LSG

**BRIEF OF *AMICI CURIAE* AMERICAN HOSPITAL ASSOCIATION, 340B HEALTH, AND FLORIDA HOSPITAL ASSOCIATION OPPOSING DEFENDANTS' MOTION TO DISMISS**

Nathan M. Berman
Fla. Bar No. 0329230
ZUCKERMAN SPAEDER LLP
101 E. Kennedy Boulevard,
Suite 1200
Tampa, FL 33602
Tel: (813) 221-1010
Fax: (813) 223-7961
nberman@zuckerman.com

*Counsel of Record*
*Counsel for Amici Curiae*

William B. Schultz*
Ezra B. Marcus*
Alyssa Howard*
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
Fax: (202) 822-8106
wschultz@zuckerman.com
emarcus@zuckerman.com
ahoward@zuckerman.com
* *pro hac vice* motion forthcoming

*Counsel for Amici Curiae*

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ........ ii

INTERESTS OF *AMICI CURIAE* ........ 1

INTRODUCTION ........ 2

ARGUMENT ........ 2

I. TGH'S COMPLAINT STATES A CLAIM FOR RELIEF ........ 2

A. The 340B Statute Does Not Preempt TGH's Claims. ........ 2

1. Federal Law Does Not Occupy the Field. ........ 3

2. TGH's Claims Do Not Conflict with the 340B Statute. ........ 4

3. TGH's Claims Do Not Discriminate Against Participants in a Federal Program ........ 9

B. *Astra* Does Not Bar TGH's Claims. ........ 11

C. The Safe Harbor Provision Does Not Bar TGH's Claims. ........ 14

II. LILLY'S UNPRECEDENTED CLAIMS DATA POLICY CAUSES SIGNIFICANT INJURY TO TGH AND OTHER COVERED ENTITIES. ........ 17

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

## CASES

*AbbVie Inc. v. Fitch*,
152 F.4th 635 (5th Cir. 2025)....................3, 5

*AbbVie Inc. v. Jackley*,
Nos. 3:25-cv-03006-RAL, 3:25-cv-03021-RAL, 4:25-cv-04156-RAL, 2026 WL 2280929 (D.S.D. Aug. 7, 2026)....................3, 9

*AbbVie Inc. v. Wrigley*,
832 F. Supp. 3d 920 (D.N.D. 2026)....................9

*AbbVie Inc. v. Murrill*,
180 F.4th 747 (5th Cir. 2026)....................3, 5

*Aids Healthcare Found. v. Apexus*,
2024 WL 3886974 (9th Cir. Aug. 21, 2024)....................13, 14

*Am. Hosp. Ass'n v. Hargan*,
289 F. Supp. 3d 45 (D.D.C. 2017)....................5

*Am. Hosp. Ass'n v. HHS*,
No. 4:20-cv-8806-YGR, 2021 WL 616323 (N.D. Cal. Feb. 17, 2021)....................13

*Arizona v. United States*,
567 U.S. 387 (2012)....................4, 5

*Astra USA, Inc. v. Santa Clara County*,
563 U.S. 110 (2011)....................2, 11, 12, 13, 14

*AstraZeneca Pharms. LP v. Fitch*,
No. 1:24-cv-196-LG-BWR, 2026 WL 2455376 (S.D. Miss. Aug. 21, 2026)....................9

*AstraZeneca Pharms. LP v. Lopez*,
Civil No. 25-00369 MWJS-WRP, 2026 WL 497141 (D. Haw. Feb. 23, 2026)....................9

*AstraZeneca Pharms. LP v. Frey*,
No. 1:25-cv-00495-JCN, 2026 WL 2145194 (D. Me. July 27, 2026)....................9

*AstraZeneca Pharms. LP v. Weiser*,
No. 25-cv-02685-PAB-STV, 2026 WL 2568299 (D. Colo. Aug. 31, 2026)....................5

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001)....................6, 7

*Chamber of Com. of U.S. v. Whiting*,
563 U.S. 582 (2011)....................5, 7

*English v. Gen. Elec. Co.*,
496 U.S. 72 (1990)....................4, 11

*Hines v. Davidowitz*,
312 U.S. 52 (1941)....................5

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996)....................7

*Morton v. Sec., Fla. Dep't of Corrections*,
684 F.3d 1157 (11th Cir. 2012)....................18

*Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*,
156 F.4th 68 (2d Cir. 2025).................... 2, 12, 13

*Murphy v. NCAA*,
138 S. Ct. 1461 (2018)....................4

*N.Y. State Dep't of Soc. Servs. v. Dublino*,
413 U.S. 405 (1973)....................4

*Novartis Pharms. Corp. v. Brown*,
No. 3:26-cv-05302-DGE, 2026 WL 1660347 (W.D. Wash. June 9, 2026)..........3, 9

*Novartis Pharms. Corp. v. Hanaway*,
180 F.4th 1097 (8th Cir. 2026)....................3, 5

*Novartis Pharms. Corp. v. Frey*,
Nos. 1:25-cv-407-JCN, 1:25-cv-416-JCN,
2025 WL 2813787 (D. Me. Sept. 23, 2025)....................7

*Or. Health & Sci. Univ. v. Engels*,
Nos. 24-2184 (RC), 24-2187 (RC), 24-2268 (RC), 24-2563 (RC),
24-2998 (RC), 2025 WL 1707630 (D.D.C. June 17, 2025)....................8

*PhRMA v. Frey*,
No. 1:25-cv-00469-JCN, 2026 WL 184504 (D. Me. Jan. 23, 2026).............. 3, 9, 10

*PhRMA v. McClain*,
95 F.4th 1136 (8th Cir. 2024) .......... 3, 5, 6

*PhRMA v. Torrez*,
No. 25-cv-1225, 2026 WL 1752214 (D.N.M. May 26, 2026) .......... 3, 9, 10

*Rice v. Santa Fe Elevator Corp.*,
331 U.S. 218 (1947) .......... 7

*Sagebrush Health Servs. v. Amgen Inc.*,
No. 2:26-cv-466-MCS, 2026 WL 1030817 (C.D. Cal. Apr. 15, 2026) .......... 13

*U.S. Airways v. O'Donnell*,
627 F.3d 1318 (10th Cir. 2010) .......... 7

*U.S. ex rel. Adventist Health System of West v. AbbVie Inc.*,
169 F.4th 1137 (9th Cir. 2026) .......... 14

*United States v. Washington*,
596 U.S. 832 (2022) .......... 9, 10

*Wyeth v. Levine*,
555 U.S. 555 (2009) .......... 7

**STATUTES**

42 U.S.C. § 256b .......... 8

Fla. Stat. Ann. § 501.212 .......... 14

**OTHER AUTHORITIES**

H.R. Rep. No. 102–384(II) (1992) .......... 5

**REGULATIONS**

340B Drug Pricing Program; Administrative Dispute Resolution Regulation,
89 Fed. Reg. 28,643 (Apr. 19, 2024) .......... 8

Final Notice Regarding Section 602 of the Veterans Health Care Act of 1992
Entity Guidelines, 59 Fed. Reg. 25,110 (May 13, 1994) .......... 16, 17

Health Resources & Servs. Admin.,
*Manufacturer Audit Guidelines and Dispute Resolution Process*,
61 Fed. Reg. 65,406 (Dec. 12, 1996) .......... 8

## INTERESTS OF *AMICI CURIAE*

*Amici* and their members benefit from the statutory discounts to which they are entitled under the federal 340B statute and would be greatly harmed if Defendants Eli Lilly & Co and Lilly USA, LLC (collectively, Lilly) were permitted to violate state unfair trade practices laws.

The **American Hospital Association** (AHA) represents nearly 5,000 hospitals, healthcare systems, and other healthcare organizations nationwide. AHA members are committed to helping ensure that healthcare is available to and affordable for all Americans. AHA promotes the interests of its members by participating as *amicus curiae* in cases with important and far-ranging consequences for their members, including cases related to the 340B program.

**340B Health** is a trade association representing over 1,600 public and nonprofit hospital and health systems that participate in the federal 340B program by virtue of serving a high percentage of low-income patients or being designated as critical access hospitals. 340B Health educates, advocates, and supports 340B hospitals in their mission to serve low income, underserved, and rural patients.

The **Florida Hospital Association** (FHA) represents more than 260 hospitals and health systems in Florida. FHA is the leading voice for healthcare in the State of Florida, supporting the missions of its members to provide the highest quality of care to the communities and patients they serve and regularly appears as *amicus curiae* to address issues affecting its members.

## INTRODUCTION

Plaintiff Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital (TGH) seeks to prevent Lilly from imposing an onerous claims data policy in violation of state laws meant to protect consumers from unfair trade practices. *Amici* respectfully submit this brief to make two points. *First*, TGH's Complaint states a claim for relief because the federal 340B statute does not preempt such state law claims and *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011) does not bar TGH's claims. "The instant case does not turn on the meaning of the Section 340B statute nor on a determination from this Court as to whether Defendants violated Section 340B." *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68 (2d Cir. 2025), *cert. pet. docketed*, No. 25-1070 (Mar. 11, 2026). Instead, TGH alleges straightforward violations of Florida state law. Those claims may proceed. *Second*, Lilly's claims data policy injures TGH (and other covered entities) by forcing it to choose between incurring costly administrative burdens or foregoing discounts to which they are entitled by law. Either result will strip TGH of vital resources and undermine its ability to provide essential care to their patients and communities. These are precisely the consequences that Florida's unfair trade practices and consumer protection laws are designed to prevent.

## ARGUMENT

### I. TGH'S COMPLAINT STATES A CLAIM FOR RELIEF

#### A. The 340B Statute Does Not Preempt TGH's Claims.

Lilly argues that TGH's claims are preempted by the federal 340B statute, citing principles of field preemption, conflict preemption, and intergovernmental immunity,

among other things. But Lilly's field and conflict preemption theories are dead wrong, and Lilly's intergovernmental immunity argument stretches that doctrine beyond recognition. Numerous courts have rejected all three arguments. *PhRMA v. Frey*, No. 1:25-cv-00469-JCN, 2026 WL 184504, at *7–15 (D. Me. Jan. 23, 2026); *AbbVie Inc. v. Jackley*, Nos. 3:25-cv-03006-RAL, 3:25-cv-03021-RAL, 4:25-cv-04156-RAL, 2026 WL 2280929, at *13–20, 22–25 (D.S.D. Aug. 7, 2026); *Novartis Pharms. Corp. v. Brown*, No. 3:26-cv-05302-DGE, 2026 WL 1660347, at *9–21 (W.D. Wash. June 9, 2026); *PhRMA v. Torrez*, No. 25-cv-1225, 2026 WL 1752214, at *10 (D.N.M. May 26, 2026), *appeal filed*, No. 26-2097 (10th Cir.). Notably, these cases involved drug companies' challenges to state laws designed to prevent precisely what Lilly's policy does here: using burdensome claims data requirements to restrict access to 340B medications.

1. *Federal Law Does Not Occupy the Field.*

Lilly's field preemption theories both misapply the relevant standard and mischaracterize TGH's state law claims. Similar arguments have been rejected by nearly every court to consider them, including the Fifth and Eighth Circuits, in the context of manufacturer suits challenging state laws governing delivery of 340B drugs to covered entities' contract pharmacies.[1] This Court should do the same.

Courts do not infer field preemption of a State statute in an area traditionally within the scope of States' police powers. *See, e.g.*, *English v. Gen. Elec. Co.*, 496 U.S.

[1] *See, e.g.*, *AbbVie v. Murrill*, 180 F.4th 747, 758–62 (5th Cir. 2026); *PhRMA v. McClain*, 95 F.4th 1136, 1144 (8th Cir. 2024); *AbbVie Inc. v. Fitch*, 152 F.4th 635, 646 (5th Cir. 2025); *Novartis Pharms. Corp. v. Hanaway*, 180 F.4th 1097, 1113 (8th Cir. 2026), *en banc review denied*, --- F.4th ----, 2026 WL 2729618 (8th Cir. Sept. 16, 2026).

72, 79 (1990). Instead, courts find field preemption only in rare instances, "when federal law occupies a 'field' of regulation 'so comprehensively that it has left no room for supplementary state legislation.'" *Murphy v. NCAA*, 138 S. Ct. 1461, 1480 (2018) (citation omitted). Indeed, "[t]he subjects of modern social and regulatory legislation often by their very nature require intricate and complex responses from the Congress, but without Congress necessarily intending its enactment as the exclusive means of meeting the problem." *N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 415 (1973). Thus, the Supreme Court has rejected "the contention that pre-emption is to be inferred merely from the comprehensive character" of federal provisions. *Id.*; *see also English*, 496 U.S. at 87. With the 340B program, "a detailed statutory scheme was both likely and appropriate, completely apart from any questions of pre-emptive intent." *Dublino*, 413 U.S. at 415. Ignoring precedent, Lilly relies on what it describes as the "pervasive" and "comprehensive" character of the federal scheme to support its field preemption argument. Lilly Mot. Dismiss 18, ECF No. 20 (Sept. 21, 2026). But Lilly fails to cite authority for its assertions about Congress's *intent* to create or occupy any purported "field" when it passed the federal 340B statute.

*2. TGH's Claims Do Not Conflict with the 340B Statute.*

Lilly next argues that TGH's claims are preempted because they conflict with the federal 340B statute. But Lilly fails to identify any actual conflict between TGH's state law claims and the 340B statute. The Fifth Circuit has persuasively explained that, under the Supreme Court's decision in *Arizona*, 567 U.S. 387, the 340B statute does not necessarily preempt state laws that address the 340B program because it "does

not 'provide a full set of standards governing' discounted drugs for needy patients." *AbbVie v. Fitch*, 152 F.4th at 646 (quoting *Arizona v. United States*, 567 U.S. 387, 401 (2012)). This Court should join the chorus of courts that have rejected Lilly's conflict preemption argument (in the state contract pharmacy law context). *E.g.*, *AbbVie v. Murrill*, 180 F.4th at 760–61; *Novartis v. Hanaway*, 180 F.4th at 1113; *PhRMA v. McClain*, 95 F.4th at 1144–45; *AbbVie v. Fitch*, 152 F.4th at 647–48; *AstraZeneca v. Weiser*, No. 25-cv-02685-PAB-STV, 2026 WL 2568299, at *7–9 (D. Colo. Aug. 31, 2026).

Lilly cannot meet the "high threshold," *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 607 (2011), for showing that TGH's claims "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941), for several reasons. *First*, rather than posing any obstacle to the aims of the federal 340B statute, TGH's claims advance them. *See AbbVie v. Murrill*, 180 F.4th at 762 (explaining that the Louisiana contract pharmacy law and the 340B statute work "in tandem to advance Congress's central aim: ensuring that 'manufacturers participating in Medicaid . . . offer discounted drugs to covered entities, dominantly, local facilities that provide medical care for the poor.'"). The federal 340B statute was enacted to help covered healthcare providers "reach[] more eligible patients and provid[e] more comprehensive services." *Am. Hosp. Ass'n v. Hargan*, 289 F. Supp. 3d 45, 47 (D.D.C. 2017) (quoting H.R. Rep. No. 102–384(II), at 12 (1992)). If successful, TGH's claims would enable 340B providers to continue to

provide essential healthcare to their patients without incurring the prohibitive administrative burdens of Lilly's claims data policy, thereby "assist[ing] in fulfilling the purpose of 340B." *PhRMA v. McClain*, 95 F.4th at 1144–45.

*Second*, Lilly suggests that TGH's "claims would circumvent Congress's intent that § 340B claims 'be enforced exclusively by the Federal Government.'" Lilly Mot. 15. But this argument reflects a misunderstanding of TGH's claims. TGH's ability to succeed in its claims is wholly separate from the question of whether Lilly's claims data policy violates 340B, and TGH does not seek to prove that it does. TGH seeks to prevent Lilly from discriminating against safety-net providers by imposing onerous conditions on the sales of its drugs to protect consumers—not to enforce the terms of the federal 340B statute. Accordingly, TGH's claims do not in any way seek to enforce the federal requirements of 340B.

*Third*, to support its conflict preemption argument, Lilly relies on *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001), a wholly inapposite case that undermines—rather than supports—its position. In that case, the Supreme Court found that the Federal Food, Drug, and Cosmetic Act (FDCA) preempted state law claims styled as fraud on the U.S. Food and Drug Administration. *Buckman*, 531 U.S. at 352. When analyzing those state law fraud-on-the-federal-agency claims, *Buckman* found that the laws implicated a unique federal interest. The Court explained: "[p]olicing fraud against federal agencies is hardly 'a field which the States have traditionally occupied'"; the state law fraud-on-the-agency claim would regulate something that is "inherently federal in character." 531 U.S. at 347 (quoting *Rice v.*

*Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)); *see U.S. Airways v. O'Donnell*, 627 F.3d 1318, 1325 (10th Cir. 2010) (citing *Buckman* for the proposition that the presumption against preemption does not apply in a case involving a field "long [] dominated by federal interests"); *Chamber of Com. v. Whiting*, 563 U.S. 582, 604 (2011) (plurality opinion) (rejecting *Buckman*-based preemption argument because the state statute at issue did not involve "an area of dominant federal concern").

As the Supreme Court later explained in *Wyeth v. Levine*, "*Buckman* . . . involved state-law fraud-on-the-agency claims, and the Court distinguished state regulation of health and safety as matters to which the presumption [against preemption] *does* apply." 555 U.S. 555, 565 n.3 (2009). Like *Wyeth*, where the Court held that the FDCA does not preempt state failure to warn claims, this case involves matters of health and safety—issues that fall squarely within a state's historic police powers. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

*Fourth*, to support its argument that a prohibition on its claims data policy would pose an obstacle to the Health Resources and Services Administration's (HRSA's) audit process, Lilly relies on a misleading description of that process. *See Novartis v. Frey*, Nos. 1:25-cv-407-JCN, 1:25-cv-416-JCN, 2025 WL 2813787, at *12 (D. Me. Sept. 23, 2025) (rejecting the drug manufacturers' claims that a state law prohibition on claims data requirements conflicts with 340B). Lilly suggests that a ruling barring it from unilaterally demanding claims data from covered entities would interfere with its ability to access the audit procedures of the 340B program. Lilly Mot. 16–17. But

claims data has never been required to meet HRSA's standard for authorizing an audit (Lilly does not give a single example of a time that HRSA has denied a manufacturer's audit request for failure to include claims data, and *Amici* are aware of none). This standard is satisfied whenever "a reasonable person *could* believe that a covered entity *may have* violated [certain provisions of the 340B statute]." HRSA, *Manufacturer Audit Guidelines and Dispute Resolution Process*, 61 Fed. Reg. 65,406, 65,409 (Dec. 12, 1996) (emphasis added). It can be met by pointing to "[s]ignificant changes in quantities of specific drugs ordered by a covered entity," or by citing "complaints from patients/other manufacturers about activities of a covered entity." *Id.* at 65,406; *Or. Health & Sci. Univ. v. Engels*, Nos. 24-2184 (RC), 24-2187 (RC), 24-2268 (RC), 24-2563 (RC), 24-2998 (RC), 2025 WL 1707630, at *5 (D.D.C. June 17, 2025). Drug companies can (and do) make this showing without claims data.

What's more, the 340B statute contemplates that manufacturers will collect specific evidence of covered entities' potential statutory violations *through* an audit. The statute provides that a manufacturer can access records related to an entity's compliance *via* an "audit." 42 U.S.C. § 256b(a)(5)(C). HRSA guidance similarly explains that, in the Alternative Dispute Resolution (ADR) process, manufacturers can establish covered entity violations because they "have the ability to gather needed information *through the audits*." ADR Rule, 89 Fed. Reg. 28,643, 28,652 (emphasis added). In contrast, HRSA's decision to *approve* a manufacturer audit is "preliminary [in] nature," *Or. Health & Sci. Univ.*, 2025 WL 1707630, at *5. HRSA has never required

that manufacturers prove violations using data regarding specific claims *before* conducting an audit. Lilly's argument puts the cart before the horse.

### 3. *TGH's Claims Do Not Discriminate Against Participants in a Federal Program.*

Lilly further contends that TGH's claims violate the intergovernmental immunity doctrine because they seek to impose requirements on it based on its participation in the federal 340B Program. Lilly Mot. 19–20. But Lilly's breathtakingly broad position is not the law. The intergovernmental immunity doctrine prohibits state laws that "discriminate[] against *the Federal Government or its contractors* if it singles them out for less favorable treatment, or if it regulates them unfavorably on some basis related to their governmental status." *United States v. Washington*, 596 U.S. 832, 839 (2022) (emphasis added) (cleaned up). Every court to address "intergovernmental immunity" in the context of section 340B has rejected the argument that manufacturers are federal government contractors, correctly finding that state law requirements on drug manufacturers that participate in the 340B program "do not in any way apply to the United States or any of its agencies or employees." *AstraZeneca Pharms. LP v. Lopez*, No. 25-00369 MWJS-WRP, 2026 WL 497141, at *15 (D. Haw. Feb. 23, 2026).[2] The reason for this finding is clear: "Manufacturers opting into the

[2] *See also PhRMA v. Frey*, 2026 WL 184504, at *6; *Novartis v. Brown*, 2026 WL 1660347, at *9; *PhRMA v. Torrez*, 2026 WL 1752214, at *10; *AstraZeneca Pharms. LP v. Frey*, No. 1:23-cv-495-JCN, 2026 WL 2145194 (D. Me. July 27, 2026); *AbbVie Inc. v. Jackley*, 2026 WL 2280929; *AstraZeneca Pharms. LP v. Fitch*, No. 1:24-cv-196-LG-BWR, 2026 WL 2455376, at *8 (S.D. Miss. Aug. 21, 2026); *AbbVie Inc. v. Wrigley*, 832 F. Supp. 3d 920, 938 (D.N.D. 2026) (concluding that the intergovernmental immunity doctrine did not apply in the context of a suit challenging North Dakota's contract pharmacy statute because "manufacturers are not agents of the federal government").

340B program are quite simply not federal contractors." *PhRMA v. Torrez*, 2026 WL 1752214, at *10.

TGH's claims also do not discriminate against the "*operations* of the Federal Government." *Washington*, 596 U.S. at 838 (emphasis added). Nor do they seek to regulate any government contractors or other entities doing work for the federal government or assisting with federal government operations. *See PhRMA v. Frey*, 2026 WL 184504, at *6–7. Indeed, "[d]rug manufacturers participating in the 340B program . . . do not agree to perform any function of the federal government or provide any goods or services to the federal government." *Id.* at *6. Instead, they "agree to provide discounts in the marketplace to certain other private entities." *Id*. Drug companies therefore "do not fall within any of the recognized categories of entities with whom the government 'deals' for purposes of intergovernmental immunity, such as employees, contract workers, suppliers, or instrumentalities." *Id.*

Lilly tries to dress up its participation in the 340B program in the cloak of a federal contractor, but the Court should reject that mischaracterization (as has every other court to consider it). Pharmaceutical Pricing Agreements (PPAs) do not transform mere program participants into federal contractors that *perform work for* the government. The "contract" merely sets forth the terms of the statute and governs manufacturers' participation in a federal program as regulated entities. As *Frey* explained, PPAs do not "confer[]" "contractor status with the federal government." 2026 WL 184504, at *6. And critically, even if Lilly qualified as a government contractor, its contract is silent with respect to claims data.

**B. *Astra* Does Not Bar TGH's Claims.**

Lilly's reliance on *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), is misplaced. Contrary to Lilly's contention, *Astra* addressed only whether covered entities could use a third-party beneficiary theory to enforce the 340B statute's federal requirements. Nothing about *Astra* displaced the Supreme Court's well-established principle that "the mere existence of a federal regulatory or enforcement scheme . . . does not by itself imply pre-emption of state remedies." *English*, 496 U.S. at 87. The *Astra* Court's hesitance to allow "potentially thousands of covered entities" to sue to correct "errors in manufacturers' price calculations" has no bearing on whether state unfair trade practices and consumer protection laws apply to drug companies participating in the federal 340B program (they do). *See Astra*, 563 U.S. at 114.

This case is different from *Astra* in two important ways. *First*, although Lilly disputes that TGH has adequately pleaded the *elements* of its state statutory and common law causes of action, Lilly does not (nor could it) dispute the validity or existence of those causes of action themselves. By contrast, in *Astra*, the plaintiffs sought to sue as third-party beneficiaries to the defendant drug companies' PPAs that they had entered into with the federal government to participate in the 340B program. But unlike the independent state law causes of action forming the basis of TGH's claims here, PPAs do not provide an independent cause of action. *Id.* Those "PPAs simply incorporate statutory obligations." Thus, the Supreme Court reasoned that "[a] third-party suit to enforce an HHS-drug manufacturer agreement . . . is in essence a suit to enforce the statute itself." *Id.* at 118. Because "Congress authorized no private

right of action under § 340B," the Astra plaintiffs had no cause of action to bring their third-party beneficiary claims. Not so here. Florida law provides a clear-cut, independent cause of action under state law.

*Second*, unlike in *Astra*, TGH's claims do not rise and fall with the finding that Lilly violated its obligations under the federal 340B statute. In *Astra*, the plaintiff covered entity "based its suit on allegations that the manufacturers charged more than the § 340B ceiling price." *Id.* at 118–19. In other words, the *Astra* plaintiff's ability to succeed on the merits was tied directly to proving that the nine pharmaceutical company defendants calculated the 340B discount in a way that violated *federal law*. Here, TGH could prevail in its causes of action alleging violations of state laws, namely unfair trade practices and consumer protection violations, without regard to whether Lilly complied with the 340B statute. TGH does not bring suit for Lilly's failure to provide 340B discounts; it challenges Lilly's claims data policy, which runs afoul of *state* unfair trade practices and consumer protection law. This could not be adjudicated through the federal ADR process that figured prominently in *Astra*.

*Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC* is instructive in this regard. 156 F.4th 68 (2d Cir. 2025), *cert. pet. docketed*, No. 25-1070 (Mar. 11, 2026). There, the Second Circuit rejected the defendant manufacturer's attempt to invoke *Astra* as a bar to the plaintiff covered entities' federal antitrust lawsuit claiming violations of the Sherman Act. Finding that the plaintiffs' operative complaint "is 'agnostic as to [the] question' of whether Defendants violated Section 340B," and that "[t]he instant case does not turn on the meaning of the Section 340B statute nor on a determination from

this Court as to whether Defendants violated Section 340B[,]" the court concluded that *Astra* did not prevent the plaintiffs from moving forward with their suit. *Id.* at 78–79. The court further found that, in contrast to *Astra*, the plaintiffs' Sherman Act claims did not in any way interfere with the administrative dispute resolution mechanism of the 340B statute because "Congress vested authority in HHS to oversee compliance with the Section 340B Drug Discount Program and enforce the ceiling price contracts, not to police antitrust violations." *Id.* at 79. As in *Mosaic*, TGH seeks to enforce wholly distinct state law obligations, and the success of its suit is agnostic as to whether Lilly's conduct violates 340B.

For similar reasons, Lilly's reliance on three unpublished, out-of-Circuit decisions is unavailing because those cases are inapposite. *See* Lilly Mot. 11–12 (citing *Sagebrush Health Servs. v. Amgen Inc.*, No. 2:26-cv-466-MCS, PVC, 2026 WL 1030817, at *1, *6 (C.D. Cal. Apr. 15, 2026); *Am. Hosp. Ass'n v. HHS*, No. 4:20-cv-8806-YGR, 2021 WL 616323, at *5 (N.D. Cal. Feb. 17, 2021); *Aids Healthcare Found. v. Apexus*, 2024 WL 3886974, at *2 (9th Cir. Aug. 21, 2024)). In all three cases, the plaintiffs sought to enforce the obligations of the 340B statute itself, not the requirements of unrelated state statutes or common law claims. *See Sagebrush Health Servs.*, 2026 WL 1030817, at *1 (the plaintiff challenged the defendant's unilateral decision to stop honoring the plaintiff's 340B covered entity status and subsequent clawback of its statutory 340B savings); *Am. Hosp'n Ass'n v. HHS*, 2021 WL 616323, at *4 (the plaintiffs brought an Administrative Procedure Act claim against federal defendants, seeking enforcement of manufacturers' obligations under the 340B statute); *Aids Healthcare*

*Found.*, 2024 WL 3886974, at *1 (the plaintiff sued as a third-party beneficiary for breach of the manufacturer defendant's Prime Vendor Agreement with HRSA). Accordingly, the plaintiffs' claims in all three cases directly hinged on whether the defendants had violated their obligations under the *federal* 340B statute.

The Ninth Circuit's reasoning in *U.S. ex rel. Adventist Health System of West v. AbbVie Inc.*, 169 F.4th 1137 (9th Cir. 2026) illustrates the distinction between the cases Lilly cites and this one. There, the Ninth Circuit rejected the defendant's argument that *Astra* barred the plaintiff's *qui tam* False Claims Act (FCA) suit against AbbVie. *Id.* at 1142–46. The court reasoned that *Astra* did not come into play there because the plaintiff based its suit not on section 340B but rather on the FCA, "which confers an express right of action for any qui tam plaintiff to remedy fraud resulting in financial loss to the government." *Id.* at 1143. Further, the plaintiff's "action is not 'in essence' a suit to enforce Section 340B." *Id.* "Unlike plaintiff in *Astra*, Adventist brings a prototypical FCA action that does not assert that defendants are liable merely because of a direct violation of Section 340B." *Id.* So too here.

In short, as both the Ninth and Second Circuits have recently held, *Astra* has no bearing on cases where, as here, a plaintiff's claim does not turn on violations of the 340B statute itself.

### C. The Safe Harbor Provision Does Not Bar TGH's Claims.

Lilly argues that the safe harbor provision (Fla. Stat. Ann. § 501.212(1)) in the Florida Deceptive and Unfair Trade Practice Act bars TGH's claims because Lilly's claims data condition "complies" with § 340B. Contrary to Lilly's assertions, Lilly

Mot. 9, 21, the D.C. and Third Circuits did not consider, much less approve, anything close to Lilly's claims data policy. Those cases involved appeals from lower court rulings on whether HRSA could require manufacturers to deliver 340B drugs to unlimited contract pharmacies.[3] All five manufacturers in these cases limited delivery of 340B drugs to a single contract pharmacy for those hospitals that lacked an in-house pharmacy. One of the five manufacturers participating in the D.C. Circuit case, United Therapeutics (UT), planned to demand that hospitals still qualifying for a contract pharmacy must submit claims data for the 340B drugs ordered for their contract pharmacy. The claims data policy issue did not even arise in the Third Circuit.

The D.C. Circuit's decision does not support Lilly's sweeping claim—or its sweeping claims data policy. For starters, the case considered claims data conditions that were applied only to contract pharmacies, not to drugs dispensed directly to patients by hospitals. The case does not address conditions applied to in-house pharmacies, and even if it did, it cannot reasonably be read as a judicial endorsement of Lilly's claims data policy. Further, the D.C. Circuit expressed significant concern that there were no facts in the record about the impact of UT's requirement on covered entities, going so far as to ask HRSA that the case be remanded to develop those facts. HRSA apparently urged the court to decide the issue on its face and on the present

---

[3] *Eli Lilly & Co. v. Becerra*, No. 1:21-cv-81 (S.D. Ind.); *AstraZeneca Pharms, LP v. Becerra*, No. 1:21-cv-27 (D. Del); *Sanofi-Aventis v. HHS*, No. 3:21-cv-634 (D.N.J.); *Novo Nordisk v. HHS*, No. 3:21-cv-806 (D.N.J.); *Novartis Pharms. Corp. v. Espinosa*, No. 1:21-cv-1479; *United Therapeutics v. Espinosa*, No. 1:21-cv-1686 (D.D.C).

record.[4] Without any facts about the impact on covered entities, the D.C. Circuit relied on the only evidence in the record (from UT itself) and unsurprisingly characterized the burden on covered entities of its yet-to-be implemented reporting obligations as "minimal."[5] After making clear that the court lacked the information needed to evaluate the legality of UT's contract-pharmacy-claims-data requirement, the court determined that that requirement did not violate 340B on its face, leaving open the possibility that a claims data requirement could violate 340B in practice depending on the burdens on covered entities.

Lilly's reliance on HRSA's 1994 guidance is also misplaced. Lilly Mot. 22-23, 27. That guidance makes clear that manufacturers may not "single out covered entities" for "restrictive conditions that would undermine the [340B] statutory objective," but "may include provisions in their contracts with covered entities that address customary business practice, request standard information, or include other appropriate contract provisions."[6] The guidance also explicitly prohibits manufacturers from requiring covered entities to provide assurances that they comply with 340B provisions as a condition of receiving 340B pricing.[7] Lilly's claims data requirement seeks information that is far from standard. Prior to its announcement of the policy, no drug company sought such information.

---

[4] *Id.* at *463*.

[5] *See id.* at *463*, 466.

[6] 59 Fed. Reg. 25,110, 25,114 (May 13, 1994).

[7] *Id.*

What's more, "standard information" must be understood in light of HRSA's full guidance. The 1994 guidance bars demands for "drug acquisition" and "purchase" information. Given that, "standard information" cannot include the kind of data that the drug companies now demand. Moreover, another portion of the Final Notice seems to equate "standard information" with "routine information necessary to set up and maintain an account." Final Notice Regarding Section 602 of the Veterans Health Care Act of 1992 Entity Guidelines, 59 Fed. Reg. at 25,112.

Finally, the reference to "appropriate contract provisions" makes clear that HRSA intended to prevent manufacturers from imposing conditions on covered entities that do not directly relate to manufacturer obligations to make the 340B price available and ensure that 340B drugs reach covered entities. Lilly's interpretation would transform a narrow exception intended to facilitate ordinary contracting into a broad authorization for manufacturers to refuse 340B pricing to covered entities like TGH that do not provide the manufacturer with extensive claims-level data. Nothing in HRSA's guidance supports this.

## II. LILLY'S UNPRECEDENTED CLAIMS DATA POLICY CAUSES SIGNIFICANT INJURY TO TGH AND OTHER COVERED ENTITIES.

Contrary to Lilly's assertions, Lilly Mot. 8–9, 30–31, its claims data policy would impose massive burdens on cash-strapped safety-net providers that often operate on razor-thin margins. In effect, Lilly and other drug companies with similar policies are now telling the 340B hospitals that treat America's most vulnerable patients that they must compile and submit an unprecedented amount of data or not

receive the discounts they are owed by federal statute. TGH and other covered entities are "damned if they do, and damned if they don't." *Morton v. Sec., Fla. Dep't of Corrections*, 684 F.3d 1157, 1161 (11th Cir. 2012). Lilly is wrong to minimize these expensive consequences for hospitals, patients, and communities.

The scope and volume of data that Lilly requires goes well beyond standard business information. For example, requiring 340B hospitals to submit both pharmacy and medical claims is unprecedented—and unprecedently onerous. Medical claims data covers drugs administered in hospital outpatient or clinic settings, whereas pharmacy claims data concerns drugs dispensed through hospital-owned or -operated pharmacies. Gathering, reconciling, verifying, aligning, and submitting data across both pharmacy and medical settings would inflict significant costs on covered entities. To make matters worse, the data for these two settings is typically spread across multiple internal recordkeeping systems. So, in each setting, covered entities like TGH will need to go hunting across different data sources to find the information that Lilly now requires. The costs of submitting all of this data will require hospitals to divert vital resources away from patient care.

What's more, Lilly wrongly asserts that the data it requires covered entities to submit is "readily available." Before Lilly imposed its new requirements, no hospital provided *medical claims* data to 340B ESP (or any drug company). That alone makes this information far from "readily available." Moreover, while some hospitals provide a limited amount of 340B contract pharmacy claims data to 340B ESP (the third-party web platform unilaterally chosen by Lilly), many hospitals do not. And for those

hospitals that use 340B ESP for its pharmacy claims, the platform has been rife with problems. Pricing is often loaded incorrectly, and claims are often wrongly denied for unknown reasons. As a result, hospitals must devote significant staff time to resolving problems, ensuring that accurate 340B pricing is provided, and challenging false denials. If problems have already occurred with a limited number of users, the bugs and blunders are certain to increase as more and more covered entities are required to use it. Those added mistakes, in turn, will increase costs for 340B covered entities because they must carefully monitor and fix inaccurate processing by 340B ESP.

Lilly also contends that hospitals already provide some data to insurers. But there are important differences between how that data is submitted for those purposes compared to what would be involved in submitting data to Lilly. Claims data are submitted to payers through automated systems that have been built, tested and refined over a number of years. In contrast, the policies that Lilly and its peers have adopted would require hospitals to manually compile data that are housed in multiple disparate systems, provide it to their 340B third-party administrators (TPAs), and then submit in the format that each drug company requires. Lilly's data policy therefore introduces a range of expensive, time-consuming and unnecessary burdens that hospitals do not face when submitting data to payers.

At bottom, the best sign of how onerous Lilly's new claims data policy will be for covered entities is how onerous its old one has been. Setting up the data feeds that are required to comply with Lilly's requirements involves weeks, if not months, of work by hospitals in coordination with their TPAs. But that is only the beginning. Lilly

now demands several additional categories of claims data. The labor and vendor expenses required to comply with these expanded demands will exceed anything 340B hospitals have faced to date—and the burdens imposed to date already have been unnecessarily costly. If this sudden change is, as Lilly claims, "part of [its] commitment to ensuring that the reduced prices offered through the 340B program help vulnerable patients," Lilly should not impose needless administrative costs that prevent hospitals from providing comprehensive healthcare services to their rural and underserved communities. [8]

## CONCLUSION

For the foregoing reasons, *Amici* request that the Court deny Lilly's motion to dismiss.

Dated: October 21, 2026

Respectfully submitted,

/s/ Nathan M. Berman
Nathan M. Berman
Fla. Bar No. 0329230
ZUCKERMAN SPAEDER LLP
101 E. Kennedy Boulevard, Suite 1200
Tampa, FL 33602
Tel: (813) 221-1010
Fax: (813) 223-7961
nberman@zuckerman.com

*Counsel for Amici Curiae*

---

[8] Lilly is also incorrect in citing HRSA's announcement regarding the revised Rebate Program to support its assertions that "the burden of submitting that [claims] data is 'minimal' and 'justified' to support 'program integrity.'" Lilly Mot. 9. The Rebate Program is entirely distinct from Lilly's policy and involves only a small number of drugs. To *Amici*'s knowledge, HRSA has never stated that the new requirements imposed by Lilly's policy are not burdensome. In any event, as AHA has demonstrated in its recent lawsuit challenging the Rebate Program, the burdens associated with that Program are enormous. *See* Compl., ECF No. 1 (Oct. 9, 2026), *Am. Hosp. Ass'n v. Kennedy*, No. 25-cv-616 (D. Me.).

William B. Schultz*
Ezra B. Marcus*
Alyssa Howard*
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
Fax: (202) 822-8106
wschultz@zuckerman.com
emarcus@zuckerman.com
ahoward@zuckerman.com

**pro hac vice* motion forthcoming
*Counsel for Amici Curiae*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Brief of *Amici Curiae* American Hospital Association, 340B Health, and Florida Hospital Association Opposing Defendants' Motion to Dismiss was filed electronically on this 21st day of October 2026, and will, therefore, be served electronically upon counsel for the parties.

*/s/ Nathan A. Berman*
Nathan A. Berman